v. Senator Kelly, and by the name on the gap, Mr. Senator Kelly, Mr. Philip B. Payne. By the name on the gap, Mr. Senator Kelly, Ms. Diane L. Payne. May I proceed? How was your travel out here today, Mr. Payne? Very smooth. I come from Park Ridge, so it was a straight shot. Not bad. A little cold, but smooth, huh? A little cold, but yeah, the car was already warmed up, so. Good morning, Your Honors, and may it please the Lord. My name is Phil Payne. I'm from the State Appellate Defender's Office, and I'm here on behalf of the appellant, Paris Walker, who appeals the summary dismissal of this pro se post-conviction petition. At Mr. Walker's trial, just before the trial court sent the jury out to delivery, the court instructed the jury, at the State's request, that the accomplice testimony of the defense witness, Sabrina Goldman, was, quote, subject to suspicion and should be considered by you with caution. So, in effect, this instruction, under IPI 3.7, marked that defense evidence with the legal equivalent of a biohazard tag. But when defense counsel- The State argued that she was not an accomplice, though, correct? Or did she? I take that back. She was an accomplice. Yes, Sabrina Goldman was an accomplice in every sense of the word. Can I ask you a threshold question that's running through my mind here? You know, you raised some legitimate issues, concerns regarding the instructions. Was that alleged erroneous ruling by the trial judge on the instructions ever raised on the direct appeal? It was not raised on the direct appeal. So tell us why it's not forfeited. This issue isn't forfeited because Mr. Walker has presented an arguable claim that appellate counsel was ineffective for failing to raise that issue on direct appeal. Can I ask you about that? Yes. I wonder whether any of those claims concerning the appellate court's errors, and I think you did raise a number of issues, I didn't see how it dealt with the instructional issue. The only point addressing instruction, as you said, was that during trial, the court's refusal to give defense tenor jury instructions to the jury denied him due process and equal protection. Courts, he's obviously talking about the trial courts, not appellate counsel. Yes, Your Honor. The main complaint or the main issue taken with these instructions is with the trial court's ruling. But within the context of raising that due process claim in his pro se post-conviction petition, Mr. Walker invokes the Sixth Amendment right to effective assistance of counsel. It's clear from his pro se petition he wanted to raise this issue, but he just mistakenly characterized it as simply trial court error instead of raising it as ineffective assistance of appellate counsel. That's your argument, correct? I think my argument is that he wanted that issue considered. Absolutely. He wanted the issue of trial court's error in failing to instruct the jury about the informant testimony. He wanted that raised. It wasn't raised on direct appeal. And by invoking the Sixth Amendment right to effective assistance of counsel within the context of that due process claim in his pro se petition, that satisfies the low pleading threshold under Hodges for presenting ineffective assistance of counsel. Which brings me to the question of prejudice. You have to demonstrate there's a reasonable probability or reasonable likelihood of success on appeal, correct? Yes, I do. And you would agree the standard is still abuse of discretion? The standard is abuse of discretion, and this Court has recognized. And why would it have been an abuse of discretion for the trial court to deny the instruction? It was an abuse of discretion for the trial court to deny the informant instruction in this case because by failing to issue that instruction at the same time as giving IPI 3.17, commenting on the testimony of and disparaging the testimony of Sabrina Goldman, the trial court effectively put his thumb on the scale of justice to my client's detriment. Well, the jury was instructed pursuant to IPI 102 that they're to consider the biased interest motive, etc. Yes, the jury was given an IPI 1.02. Would you agree with me that the use of paid informants, either cash or consideration, for a favorable sentence or a combination of both, which you have in this case, have been the foundation of drug enforcement in this state and throughout the country for decades? I would say it's a critical component to law enforcement. Yes, it's basically the foundation of local law enforcement, turning informants each and every day throughout every state in this country. Yet we still don't have an IPI instruction for this particular circumstance, correct? That's true. We do not have an IPI for this situation. But in this case where the accomplice instruction was given and the jury was effectively told, not by a party but by the trial judge, that the law disfavors Sabrina Goldman's testimony and the same legal fact was true as applied to Felix Rios' informant testimony, a special instruction was not only proper but was necessary in order to maintain any semblance of fairness in these instructions. With respect to Justice Hudson's question about ineffective assistance of appellate counsel, I want to emphasize that by invoking the Sixth Amendment right to effective assistance of counsel within his due process claim in the petition, there's no other lawyer that Mr. Walker could take issue with other than appellate counsel on direct appeal. His trial attorney did everything humanly possible to raise this issue in the trial court, to re-raise the issue once it was ruled upon, and then to preserve the issue for direct appeal. That means a perfectly preserved instructional issue is present in this case. I, as an appellate lawyer, dream of issues like this when I read a trial record. You say in your brief, you cite Williams and Hamby and a few other cases for the proposition that informant's testimony should be highly scrutinized, correct? Yes. However, the cases that you cite were pre-Collins, correct? Yes, sir. For example, in Williams, the Supreme Court said, when it appears that a witness has hopes of a reward from the prosecution, that the testimony should not be accepted unless it carries with it an absolute conviction of its truth. Yes, Your Honor. Would you agree that that is not the standard of review anymore? That the Collins standard of review, which was an accomplice case, that that is a standard of review with respect to either accomplices or informants?  It's the Collins standard of review. I would submit that People v. Williams, the legal standard articulated in there, does not have to control this case in order for Your Honors to rule in favor of Mr. Locke. And the law is clear, was clear at the time of Williams, and is still clear post-Collins, that the testimony of an informant does raise red flags, just like the testimony of an accomplice does. And there was liberal examination of the informant, Mr. Reales, in this case, correct? Yes. The defense counsel was able to expose his motivations for testifying, his criminal history, use of drugs, being paid cash, getting favorable consideration, correct? Yes, sir. The jury had all of that in front of them. The jury had all of that in front of them, but what they didn't have was the critical component of the law that governs this case, that given all those problematic aspects of Mr. Reales' testimony, the law in Illinois also views his testimony by its nature as suspicious and must be handled with caution. And when the defense witness is flagged with the scholarly letter of the accomplice instruction, in order to maintain fairness in the instructions, that informant instruction was necessary. The instruction that was given, 3-17, I believe? Yes. When a witness says he's involved in the commission of a crime, the testimony of that witness is subject to suspicion. Does that instruction cover both the female prostitute accomplice as well as the informant? Your Honor, it did not cover Mr. Reales' testimony. That was the justification that the trial court reached in refusing to give the informant instruction? No, you didn't answer my question. I said, does this instruction apply to both Mr. Reales and Ms. Goldman? No, it does not, Your Honor. Why doesn't it? It applies only to Mrs. Goldman because she is indictable for the criminal conduct of Mr. Walker in this case. Mr. Reales was not indictable for delivery of a controlled substance or conspiracy to deliver a controlled substance. In fact, as the State correctly pointed out in closing argument, devastatingly pointed out to undermine defense counsel's attempt to salvage a bad situation, arguing that the accomplice instruction applies to Felix Reales too, the State correctly pointed out that Felix Reales isn't indictable for any conduct here because he's just participating in a criminal investigation with the police. So the accomplice instruction did not apply to Felix Reales. And, in fact, the State was able to capitalize on this rough justice that the trial court tried to reach in saying everyone can argue that everyone's an accomplice. It didn't apply in this case. The trial court, in its ruling on the post-conviction petition, on a couple of occasions misconstrued what had actually taken place. Yes, Your Honor. Both post-trial and in evaluating the post-conviction petition, the trial court characterized Mr. Walker's issue or legal issue as he wanted the accomplice instruction given, and it was given. Well, that's not what he was arguing. He's arguing that once the accomplice instruction is given, it is imperative in the name of fairness to also warn the jury that the State's witness, Felix Reales, is marked by the same credibility problems. Counsel, getting back for a second to what the defendant attempted to encompass in his petition, are you aware of the Stockton case when this district had held that the claim of ineffective assistance of appellate counsel does not fall under the Sixth Amendment? I am not aware of that case, Your Honor. I would be happy to do some legal research and apply you with a supplementary. That's what it stands for. It does not. So the Sixth Amendment right to effective assistance of counsel does not involve the appellate, the right to appellate counsel. Holding that a claim of ineffective assistance of appellate counsel does not fall under the Sixth Amendment, that would tend to weigh against the general allegation that because he's raised it, it would encompass any issues that could have been raised regarding the conduct of counsel. Assuming for the moment that Stockton is sound, and I wouldn't concede at this point. Well, it's a district, but go ahead. Assuming, Your Honor, that it's a sound decision, I would submit that we're talking about a pro se litigant writing from a prison cell who is trying to get this due process violation in the instructions, this clear unfairness where the jury was told don't believe or at least approach Sabrina Goldman's testimony as suspicious. But even though the same logic applied to Felix Rios, they weren't told the same thing about him. When raising this issue in a pro se petition and invoking the Sixth Amendment right to effective assistance of counsel, the only lawyer whose omission is at issue in this case is the director of counsel for failing to raise the issue. I think he stated the gist of a claim of ineffective assistance. But he says the court's refusal. That's obviously the trial court, isn't that? Yes, it is, Your Honor. Okay. Again, I would say under Hodges' liberal pleading standard, viewing this petition with a lenient eye and viewing the fact that he has invoked his Sixth Amendment right to effective assistance of counsel, perhaps it's not the Sixth Amendment, but everyone does have the right to effective assistance of a counsel on direct appeal. He didn't get that in this case. Let's take a look at what appellate counsel did in this case. Appellate counsel on direct appeal filed a two-issue brief. The first was a challenge to a relatively anodyne comment from the trial court about the definition of reasonable doubt. Within two months of that opening brief being filed, that issue was dead in the water. People v. Downs comes down. Mr. Walker's only hope for a new trial is gone because of People v. Downs, to the point that Well, Downs at the time was hot. Yes, he was hot. So I would have raised that issue, too, if I were him, but that was his leading issue. He had to raise it under Rule 450, Rule 451 because it was a forfeited issue. So he's forgoing this perfectly preserved instruction. Well, you say perfectly preserved as if it was a win. You're right. In Evans, the Illinois Supreme Court said is for the jury to consider under the traditional rule on how to evaluate testimony of witnesses, and you acknowledge that the jury had all of that evidence. And, Your Honor, I don't dispute that the task is for the jury to evaluate that informant's credibility, but I think the jury should be made aware of the law that controls that and should guide that jury's disposition of the credibility question, particularly, and I hate to beat a dead horse, particularly where they are told that the defense witness has credibility problems under Illinois law because of 3.17, equity, fairness demands that the informant instruction be given as well. There's no Illinois law foreclosing this issue at the time of Mr. Walker's direct appeal. There was Illinois law blessing the issuance of special instructions on informant testimony. People v. Drumwright, People v. Garrett, it's on page six of our reply brief. So a panel counsel, if he had done the legal research, would have found a vacuum. That's the type of scenario that we raise issues. We don't say, oh, there's no dead vein Illinois Supreme Court case blessing this issue. We say, this is an unsettled issue of law in Illinois. Let's raise it. And you say Trice does not resolve that question? I don't believe Trice resolved this question, at least not in our, not in, if I may, Your Honor, I'll answer. Go ahead. I don't believe that Trice forecloses this issue. First, Trice was a direct appeal. This is a first-stage dismissal, so we're dealing with arguability. Second, Trice, trial counsel didn't request the instruction, so he had to raise ineffective assistance of trial counsel for failing to raise a special instruction. Here, trial counsel did everything he could. And lastly, Trice doesn't present the deep inequity in the instructions that is present in this case. There's no countless testimony in Trice. So there's no 3.17 given. There's no counterbalancing that's necessary. With respect to the informant in this case, besides the video, there was also voice. The defendant is overheard speaking in language that the informant testifies was related to drugs, correct? Yes. So it was not just merely video surveillance and a police officer's testimony. There was actually the voice of the defendant on tape, as well as Ms. Goldman, correct? Yes. The video evidence, it is audio as well, and it captures some large chunks of these interactions. But critically, what it does not capture is the nature of what was actually exchanged between the parties. Critically, the video evidence does not completely capture what Mr. Rios did after these alleged transactions. He would go into his house, cover the camera, obliterate the view of the camera, lock the camera for a time before meeting up with the undercover officer to hand over the drugs. So the video evidence leaves big questions and big blind spots for the jury to answer. And in answering that question, they should have been given the informant instruction. Thank you. Good morning, Your Honors. I'm going to briefly address the forfeiture issue first. As Justice Hudson knows, since he was on the Rule 23 in that case, defendant did not raise the jury instruction issue. And as you pointed out, Stockton does hold, in that case, this court held that invoking the Sixth Amendment did not, that went through trial. It did not cover on appeal. In this case, in the defendant's position... I don't want to throw you a curve, but what about the fact that he raised the 14th Amendment as well? He did, right? True. Can I make a little distinction in his actual writing that I think will kind of clarify this? He is well able to articulate ineffective assistance of counsel claims in other aspects. At C-171 on 2 and 5, he states, in regard to other charges, in number 6, in regard to the chain of custody, the drugs, and the camera obscured. In number 7, it's the $50 appellate court cost. In number 8, appellate was ineffective for not claiming the trial court, was ineffective for failing to object to closing argument. And in number 9, that counsel failed to amend the petition to avoid. So, in other words, when this defendant is choosing to challenge his appellate counsel, he articulates it in other spots in his petition. So its notable absence in reference to this particular charge at C-168, 169 to 170, and 171 at number 1 is significant. Well, that's a very good logical argument. However, as counsel has pointed out here, what would be the purpose of, under the heading of, you know, appellate court counsel and errors, whether the trial court's failure to give instruction, what would be the point of bringing that in if it wasn't related to appellate court counsel? Obviously, he's up on appeal, okay? He's complaining generally about the appellate court, and he raises the point about the instruction. What else, counsel is saying, would he be talking about? I believe when the trial judge in this case was issuing his ruling, he commented on the defendant's rambling nature of his petition. So I think this is rambling, and I think this comes squarely under Stockton. And in Stockton, this court did say, you know, that the defendant had not raised the issue and it was forfeited. It may come down to us determining how low the threshold is. Exactly. But that goes more into the merits, so I'm going to launch into that and get away from the forfeiture. Do you agree that involved in the commission or involved with the commission of a crime relates only to accomplices instead of other people? No, I don't. In this case, that instruction did not specify, you know, just Goldman or just Rios. It was the court said the parties are free to argue, you know, either way. And so the issue was then in front of the jury. You know, the case law makes clear that Rios would not have been an accomplice. He's a cooperating informant, not an accomplice. So the trial court was in error, correct? I... And the state argues that it doesn't apply to Rios. True. Which is an accurate argument. In this case, I think some of the other principles are that what's important is getting the essence of the instructions in front of the jury. Did the defense object to the accomplice instruction? No. They also wanted that in. But they wanted an informant instruction. In addition. And that's where the trial judge then is saying, you know, parties are free to argue that that goes to either or both of the two individuals. And obviously, you know, the jury reading that instruction, when it doesn't specify, you know, it just says the person's involved, you know, in the offense. So, you know, they would not be inclined to think that, you know, as a matter of law, it excludes someone. Was this a close case? I don't think so. In this case, we had, as your honors noted, you know, the video and the audio. There were actually four separate transactions where Rios set up the buys with Goldman and the defendant. So it's, although his defense was that they were pimp prostitute rather than drug deals, that's a fairly large stretch for the jury, you know, to believe that alternate explanation. What was the innocent or alternate explanation for the terms butter and it would not be necessary to read? Was there an explanation for those? It was in and it was presented to the jury. I believe it was that those were nicknames for another prostitute and that that referred to, you know, getting this particular person rather than the quality of quantity of the drugs. A couple of important things to remember. I'm going to paraphrase Coleman at 13, and that's judicial scrutiny of counsel's performance must be highly deferential. It's all too tempting for defendant to second guess counsel's assistant after an adverse decision and too easy for the court examining counsel's defense after it's proven unsuccessful to conclude a particular act or amendment. The definition was unreasonable. In this case, there are several layers. Defendant is entitled to competent, not perfect representation. Appellate counsel has the same Strickland standard applied, and with Strickland at the first stage of a post-conviction petition, ineffective assistance argument will not be summarily dismissed if it is arguable counsel's performance fell below the objective reasonable standard, and it's arguable the defendant was prejudiced. That's from Hodges. Appellate court is not required to raise every conceivable issue, and it is not incompetent to refrain from raising an issue unless counsel's performance appraisal of the issue was patently wrong. In this case, two pursuits were raised on the direct appeal. You talked about the recent decision that threw a kink into that first issue, but the defendant actually got relief on the second issue. So it's very hard to argue that when defense appellate counsel was choosing which issue and doesn't have to brief every conceivable issue, that they might focus, that they would in fact focus on two arguments which looks like they are winners, and the first one looked very good until... But the second issue wasn't an easy one. Well, yes, but they rose it as they won. I could write that in five minutes. Yes, but if you then raise a series of other arguments, you sort of dilute the strength of your two arguments which you think are real winners. So again, appellate counsel shouldn't be considered ineffective for doing that, and in this case, appellate counsel, in order to show the jury instruction issue, they're going to have to establish that the trial court abused its discretion, which is a difficult standard to meet, and particularly with the holding in Trice, I don't think that that is a real win-win argument. Would you agree that... I could not find a case. Could you find a case where the state offered an accomplice instruction but then objected to an instruction on informant? I didn't see any of those. I think in this case, I noted... I mean, the accomplice instruction traditionally is given to benefit the defendant because the state's witness is an accomplice, somebody who's been given consideration. So that instruction is given to protect the defendant's interest to make sure that the jury properly considers the state's evidence and protect his right to being proved guilty beyond a reasonable doubt. Would you agree? Yes. And in this case, the instruction was given to benefit the state, but at the same time, the state objected to an informant instruction that would have basically replaced the traditional protection that the accomplice instruction provides for a defendant. I think this is a little... It seems very unfair, doesn't it? No, I don't. In most cases, the defendant's... Co-defendant's trial would have been severed, as it was with Goldman in this case. So, you know, you don't have, you know, as prominent an issue. And in this case, I noted in my brief that IPI criminal 3 introduction disapproves instruction. And there's no special instruction offered police officer testimony. That's at 317. They don't recommend separate expert witness at 318. So the accomplice instruction is the only special instruction on witness credibility. The courts then, you know, hold that or hermit that... The general credibility of witnesses instruction, which is IPI 1.2, is used. And then the parties argue, and in this case very vigorously, regarding the credibility of the witness. On page... I think it's page 9 of my brief, I set out the different moments where the Rio Santos trial was held. When the defendant's credibility was contested, and counsel did that very diligently. In Milker, which the defendant cites on page 6 of his reply brief, the court commented when assessing any prejudice, his credibility was not left to chance. That's at 376. It's exactly the same here. This defendant's credibility was not left to chance by his defense counsel. He argued everything he could, the circumstances of the crime, the deal, you know, everything. But he didn't have the instruction? He had the instruction for the general, which is what the IPI recommends. And they had the accomplice, which is generic and can incorporate the informer as well as the defendant, because he's involved in the crime. Does it argue that she was an accomplice relative to prostitution or relative to the drug delivery, or both? I believe it would extend to both. The state's theory, obviously, is that it's drug activity. The defendant's alternate explanation is that it was a prostitute-pimp arrangement. And that's also one of the differentiations between this case and People v. Luck. In Luck, the court gave a general credibility instruction, but it was much more extensive than that here. It didn't give an accomplice instruction. But it says that the instruction alerts a juror to potentially unique problems that, in here, when a vigil is paid to inculpate a defendant, and the instruction more effectively cautions jurors to think closely about that testimony. And that's exactly what the two instructions in this case did. Luck also did not hold that the informant instruction was required in all cases. There's some factual differences. There was little corroborative evidence beyond the testimony. There was no support for Tompkins' claim that he had been buying cocaine several times a day from the defendant for a year, and the video of Johnson was of such poor quality that it was not used at trial. The detective there somewhat corroborated by saying Johnson came back with cocaine, but he hadn't searched her thoroughly before she left. And in that case, the defense counsel's strategy was focused entirely on discrediting the government's witness, and they didn't offer an alternate explanation of events such as the defendant did here. Here, the officers observed and heard the transaction. They searched the informer. There was more than one purchase, and the defense counsel offered an alternate explanation. And if I could just give one more quote, this is from Trice. We seriously doubt that any sensible jury using common sense needs to be instructed to view paid informants with caution. This is especially true where, as here, defense counsel addressed the informant's potential bias and interest on cross-examination and in closing argument. Do you have any more questions? Thank you. Thank you. I take it you don't buy that quote from Trice? I'm not behind that quote from Trice. I think I'll, I guess I could start there. So I don't think that the general instruction given under 1.02 satisfies to inform the jury of the special credibility issues of an informant. But even if that's the case in a general sense, and I'm not suggesting that in every case where an informant testifies, you need to give a special instruction on informant testimony. The facts situation here is a unique one because we have the accomplice versus the informant. And in order for there to be a fair playing field, you either need to give neither instruction and just go with 1.02 and let the jury figure out and use common sense as the Trice Court would have it that an accomplice has credibility problems, an informant does too, but you certainly can't give one and not the other. Have you found a case where you had this dynamic? I have not, Your Honor. I have not found a situation where an informant versus an accomplice and one or two. Yes, Your Honor. There was an accomplice instruction? Yes, Your Honor. There was a general instruction relating to people who were involved in the commission of a crime? That was the accomplice instruction, I believe. It was 317? Yes. Okay. So you're saying there were actually two instructions? One was an accomplice instruction and another accomplice instruction? No, Your Honor. 1.02, right? 1.02, yeah. 1.02 is the general instruction that says evaluate credibility. 3.17 was the accomplice instruction, the pattern instruction given as it applied to Sabrina Goldman's testimony. It was clear, as Justice Burkett pointed out, that that instruction did not apply to the testimony of Felix Rios. And in fact, for opposing counsel to argue that it was proper for defense counsel to argue that the accomplice instruction applied to Felix Rios, that's in diametric opposition to the state's position before the jury. And that should be affirmative waiver at this point. Counsel, what is the law as to when a court should give a non-IPI instruction? Isn't there a case where guys to court are making a determination? Yes. IPIs are always the favored option. If there's an IPI on the topic, give it. But if there's a relevant aspect of the law that does not have an IPI that speaks to it and it's necessary... Fairness requires it. Fairness requires it. Or if it would aid the jury in its duty of solving the case, of determining the case, then a court does not abuse its discretion in giving a non-IPI. Are you saying this is such a case? I'm saying that this is such a case where a trial court does abuse its discretion in failing to give a non-IPI. Did the jury submit a question relative to clarifying 17? No, Your Honor. The jury asked a question, I believe, asking about whether culpability could turn on transportation, whether he has to be the driver or the person who actually handled the drugs or disposed of drugs. But to get back to the legal question about abuse of discretion, this Court in Peeble v. Wolf and Peeble v. Hines has found that a trial court has abused its discretion in refusing a non-pattern IPI. And so it is possible for a court to abuse its discretion by failing to give a non-IPI. And this is the type of case where that abuse of discretion occurs. Now, keep in mind, this was a preserved issue. So if Appellate Counsel had raised it on direct appeal, the State would have had to prove that the error was harmless beyond a reasonable doubt. This is not direct appeal. We're arguing ineffective assistance of Appellate Counsel for failing to raise that issue. So is there a reasonable probability that if Counsel had raised it on direct appeal, the State wouldn't have been able to prove it harmless beyond a reasonable doubt? It's even more watered down. It's arguable. Is it arguable whether there's a reasonable probability that if Counsel had raised it on direct appeal, the State wouldn't have been able to prove it harmless beyond a reasonable doubt? The answer is yes. The answer has to be yes. With respect to closeness of the evidence, the question isn't whether it's close, whether the evidence is close. It's whether the State would have proven that the error was harmless. The State points out that the second issue on direct appeal was successful. But again, as Justice Burkett pointed out, that was paper relief. That was paper relief that did not move the needle for Mr. Walker. This was the best issue for his direct appeal. It wasn't raised. That's ineffective assistance. If there are no more further questions. Thank you. Thank you. Thank both parties for their arguments today. We have another case on the call. A decision will be issued in due course, of course, to answer recess.